## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MADELEINE M. MIEHLS,

                                      Case No. 04-CV-72287-DT

         Plaintiff,

v.

HENKEL CORPORATION, HENKEL
CORPORATION VOLUNTARY TERM
LIFE PLAN and METROPOLITAN LIFE
INSURANCE COMPANY

         Defendants.

_____/

### ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT
### AND
### GRANTING DEFENDANTS' MOTIONS FOR JUDGMENT

Plaintiff Madeleine Miehls filed this action on June 21, 2004, under the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.  Plaintiff's

complaint seeks to recover benefits under 29 U.S.C. § 1132(a)(1)(B).  On January 4,

2005, Plaintiff filed her "Motion for Summary Judgment." On January 25, 2005,

Defendant Metropolitan filed its "Motion to Affirm the Administrators Decision" and

Defendants Henkel and the Henkel Voluntary Term Life Plan filed their "Motion for

Summary Judgment" on January 26, 2005.  The court interprets each motion as a

"motion for judgment."  *See Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 619 (6th

Cir. 1998); (11/15/04 Scheduling Order at 2 (citing *Wilkins* and stating that "the

summary judgment procedures set forth in Rule 56 are inapposite in ERISA actions and

. . . should not be utilized").

## I.  STANDARD OF REVIEW

Denials of benefits under an ERISA plan by the plan administrator are reviewed *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  If the plan provides the administrator with discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the court reviews the administrator's determination for arbitrariness or caprice.  *Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801, 807 (6th Cir. 2002); *Miller v. Metro. Life Ins. Co.,* 925 F.2d 979, 984 (6th Cir. 1991); *Valeck v. Watson Wyatt & Co.*, No. 03-1854, 2004 WL 500985, at *1 (6th Cir. Mar. 11, 2004).

Both sides have agreed that the arbitrary and capricious standard of review applies in this case.

## II. FINDINGS OF FACT

1.  Plaintiff Miehls is the widow of Gerald Cormier, a former employee of Defendant Henkel Corporation.

2.  Gerald Cormier had been working for Henkel Corporation since October 3, 1983 until shortly before his death in February 3, 2003.

3.  Plaintiff seeks entitlement to Voluntary Term Life Insurance under the Henkel Corporation Voluntary Term Life Plan ("the Plan"), an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

4.  On or about September 20, 2002, Henkel Corporation announced the benefits that

would be available in the 2003 calendar year for its employees.  These benefits were

 described in a brochure entitled "2003 Benefit Highlights Booklet - Henkel."  (Def.

 Henkel's Resp. Ex. 2; Pl.'s App. Ex. 1)

5.  MetLife issued a group policy to Henkel Corporation under which it provided the

voluntary term group life insurance coverage to employees of Henkel.  The life

insurance benefits were fully insured by MetLife.  The coverage would be effective

January 1, 2003, for employees who were actively employed on or after the effective

date and who properly enrolled for coverage.  (Admin Record at 27.)

6.  On September 20, 2002, while actively employed by Henkel, Mr. Cormier took the

necessary steps to enroll online for voluntary life insurance coverage that was to go into

effect on January 1, 2003.  (Def. Metlife's Mot., Ex. C.)

7.  On September 26, 2002, Cormier became ill and was placed on short-term disability.

(Admin. Record at 118.)

8.  On November 6, 2002, Cormier received a benefit confirmation, confirming his

enrollment, and on January 1, 2003, Defendant Henkl began withholding $18.11 per

pay period to cover the insurance policy. (Pl.'s App., Ex. 2.)

9.  Cormier did not return to active employment with Henkel after September 26, 2002,

and on February 3, 2003, he died of kidney cancer. (*Id.* at Ex. 4..)

10.  On February 24, 2003, Plaintiff submitted her claim for life insurance benefits.

(Admin. Record at 120.)

11. On April 14, 2003, MetLife wrote Plaintiff a letter indicating that her claim for

Voluntary Term Life insurance benefits was denied because Cormier was not actively at

3

work at the time the coverage became effective on Janary 1, 2003, as required under the Plan. (*Id.* at 103.)

12.   On June 12, 2003, Plaintiff submitted an appeal. (*Id.* at 80-82.)  In support of the appeal, Plaintiff submitted a copy of the 2003 Benefit Highlights booklet that allegedly had been provided to Cormier by Henkel Corporation.  Plaintiff advised that her claim was based on the Benefit Highlights booklet's omission of the "actively-at-work" requirement.  (Def. MetLife's Mot. at 2.).

13. Plaintiff also indicated that had Cormier known that he had to be actively at work on or after the effective date, he would have returned to work for a day to effectuate the coverage. (*Id.*)

14.  Plaintiff further maintained that neither she nor her deceased husband ever received a copy of the Plan or the summary plan description ("SPD") prior to Cormier's death.  Plaintiff says that she relied on the Benefit Highlights Brochure.  (Pl.'s Mot. at 6-7.)

15.  On November 21, 2003, MetLife wrote a letter to Plaintiff, stating that its decision to deny benefits was being upheld. (Admin. Record at 75-76.)

16.  MetLife again indicated that because Cormier did not return to active employment on or after January 1, 2003, the life insurance coverage never went into effect and no life insurance benefits were payable.  MetLife further indicated that state equitable estoppel claims were preempted by ERISA and, under ERISA, equitable estoppel is not available to change the terms of an unambiguous plan document. (*Id.*)

17.  MetLife relies on the express language of the Plan.  It notes that the Benefit Highlights Booklet was not intended to be all inclusive and that the booklet did not

4

conflict with the Plan language.  It concluded that *Edwards v. State Farm Mutual Automobile Insurance Co.*, 851 F.2d 134 (6th Cir. 1988) did not apply because the Benefit Highlights Brochure was not an SPD, and even if it was, it did not conflict with the terms of the plan. (Def. Metlife's Mot. at 16-19.)

18.  On June 21, 2004, Plaintiff filed a complaint in the United States District Court for the Eastern District of Michigan, challenging MetLife's final determination under ERISA, 29 U.S.C. ¶ 1132(a)(1)(B).

### III.  CONCLUSIONS OF LAW AND APPLICATION OF FACTS TO THE LAW

Under the arbitrary and capricious standard of review, the court must determine whether MetLife's determination to deny Plaintiff benefits was rational and consistent with the terms of the Plan.  *Miller*, 925 F.2d at 984; *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996).

> [T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action.  When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.

*Williams v. Int'l Paper Co.,* 227 F.3d 706, 712 (6th Cir. 2000) (internal citations and quotations omitted); *see also McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) (quoting *Williams*).  In other words, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious."  *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989).

5

**A.  MetLife's Decision was Rational and Consistent With the Unambiguous Terms of the Plan**

"Federal law gives effect to straightforward language in ERISA-governed plans." *Lake v. Metro. Life Ins. Co.*, 73 F.3d 1372, 1379 (6th Cir. 1996).  "Courts should interpret ERISA plan provisions 'according to their plain meaning, in an ordinary and popular sense.'" *Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 617-18 (6th Cir. 2002) (quoting *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998)).  In determining the plain meaning of Plan language the court "must give effect to the unambiguous terms of an ERISA plan." *Lake*, 73 F.3d at 1379; *see also Boyer v. Douglas Components Corp.*, 986 F.2d 999 (6th Cir. 1993) (the court is required to give effect to the unambiguous terms of the plan).

The Plan describes the requirements to be eligible for benefits.  The Plan states:

ELIGIBILITY FOR BENEFITS

Personal Benefits Eligibility Date

If you are an employee on January 1, 2003, that is your Personal Benefits Eligibility Date.  If you become an employee after January 1, 2003, your Personal Benefits Eligibility Date is the date you become an Employee of the Employer.

(Admin. Record at 27.)

The Plan goes on to state:

Active Work Requirement

You must be Actively at Work in order for your Personal Benefits to become effective.  If you are not Actively at Work on the date when your Personal Benefits would otherwise become effective, your Personal Benefits will become effective on the first day after you return to Active Work.

(*Id.* at 30.)

6

The express terms of the Plan unambiguously provide that the policy does not become effective until January 1, 2003.  If the employee is not actively employed on or after that date, he is not eligible for benefits.  Because Cormier did not return to active employment on or after January 1, 2003, the Life Insurance coverage never went into effect and no benefits were payable.  Thus, MetLife's decision to follow the plain meaning of the Plan's language is not arbitrary and capricious.

Plaintiff, however, argues that the court should ignore this express and unambiguous Plan language and find MetLife's determination arbitrary and capricious because the Henkel Benefits Booklet, allegedly the only Plan information made available to Cormier before his death, does not expressly state that an employee has to work on or after January 1, 2003, to be eligible for benefits.  Plaintiff contends that the Henkel Benefits Booklet operates as a Summary Plan Description ("SPD").  Plaintiff further asserts that the SPD is misleading and conflicts with the Plan's terms, arguing that the SPD should control as discussed in *Edwards v. State Farm Mutual Automobile Insurance Co.*, 851 F.2d 134 (6th Cir. 1988).

### B.  The Henkel Benefits Brochure Does Not Qualify as a Summary Plan Description Under Section 102 of ERISA, 29 U.S.C. § 1022

Section 102(b) of ERISA specifies the information that is required to be in a SPD, including the names and addresses of the agent designated for service of legal process, the administrator, the trustees, the type of administration for the plan, the date of the end of the plan year, the procedure for presenting claims for benefits, and remedies available.  29 U.S.C. § 1022(b).  All of these elements are missing from the Henkl brochure.  (*See* Def MetLife's Mot., Ex. B.)

7

The Sixth Circuit has ruled that "plan documents and SPDs exclusively govern an employer's obligations under ERISA plans." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 402 (6th Cir. 1998) (citing *Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir. 1988)).  In addition, other courts have ruled that documents similar to the Benefits Highlight brochure do not qualify as SPD's and therefore cannot overrule unambiguous terms in the official plan.  *See Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310 (3d Cir. 1991) (finding a brochure written by employer describing life insurance benefits did not qualify as a SPD and therefore Plaintiff could not rely on the omission of an "actively at work requirement" to qualify for life insurance, when such requirement was in the official policy).  The Brochure does not qualify as a SPD under ERISA.

### C.  The Henkel Benefits Booklet is Not Misleading and Does Not Directly Conflict with the Terms of the Plan

Nonetheless, even if the Henkel Benefits booklet was to be considered a SPD, Plaintiff's claim still fails.  In *Edwards*, the Sixth Circuit held that statements made in summary plan descriptions will be binding if they directly conflict with statements contained in the Plan itself.  *Edwards*, 851 F.2d at 136.  The Edwards court enforced the terms of a summary description where the SPD terms directly contradicted those in the plan and where the plaintiff had received only a summary description and not the plan documents.  The court determined that "[i]t is of no effect to publish and distribute a plan summary booklet designed to simplify and explain [the plan] . . . and then proclaim that any inconsistencies will be governed by the plan [terms].  Unfairness will flow to the employee for reasonably relying on the summary booklet."  *Id.*

8

However, the Sixth Circuit has repeatedly held that *Edwards* "requires more than an inconsistency of terms. The SPD and the plan must directly conflict." *Valeck v. Watson Wyatt & Co.*, 2004 WL 500985 at *2; *see also Garst v. Wal-Mart Stores, Inc.*, 30 Fed. Appx. 585, 2002 WL 409414, *6 (6th Cir. Mar. 12, 2002) ("reliance on *Edwards* was misplaced when there was nothing to indicate a conflict between the terms of the SPD and those of the underlying ERISA plan"); *Anderson v. Mrs. Grissom's Salads*, Inc., 221 F.3d 1333, 2000 WL 875365, at *5 (6th Cir. Jun. 19, 2000) ("*Edwards* requires more than inconsistency; rather, the SPD and the Plan document must directly conflict."). Moreover, "language in a plan summary that is merely ambiguous should not be permitted to trump unambiguous language in the plan itself." *Foltice v. Guardsman Prods.*, Inc., 98 F.3d 933, 938 (6th Cir. 1996); *Lake*, 73 F.3d at 1379.

Plaintiff argues that Cormier relied on the terms of the Henkel Benefits booklet in making his decision to apply for life insurance benefits and that the booklet made no mention that he would be required to work on or after January 1, 2003, to be eligible. Plaintiff argues that the "actively-at-work" requirement was omitted and this omission creates a direct conflict between the Plan provision and the highlights booklet.

The court, however, is not persuaded that this presents a direct conflict between the Plan language and the brochure. The booklet's omission of the actively working requirement does not set up a direct conflict between the booklet and the alleged Plan. The Highlights Booklet was intended only to advise employees of upcoming benefits that would be available in the 2003 calendar year and to describe the process of enrollment. The Brochure was not intended to be and in no way purports to be a comprehensive description of the requirements to have benefit coverage become

9

effective.  The title itself, "2003 Benefit Highlights Booklet," suggests it was not comprehensive in nature. The fact that the benefit highlights booklet might not have been available in September, 2002,[1] does not change the fact that the benefits brochure was not meant to be comprehensive; it is not reasonable to assume that the sparse requirements listed in the Highlights booklet were in fact exhaustive.  Indeed, the first page of the brochure, on an unnumbered page before the table of contents, states that discrepancies between the booklet and the Plan will be decided in favor of the language.[2]

Accordingly, the Benefit Highlights booklet does not preclude a further requirement that the employee also be actively at work on or after the day the policy was to take effect. The booklet is silent on such a requirement, not contradictory. "When an SPD simply omits rather than contradicts plan details, the plan will govern." *Sprague*, 133 F.3d at 401.  Further, the best argument that Plaintiff can make is that the Booklet is ambiguous as to when the "actively-at-work" requirement must be met — whether it is met at the time of enrollment, at the time the policy becomes effective, or at both times.  However, an SPD that is merely ambiguous is "not...permitted to trump

---

[1] Plaintiff further suggests the Summary Plan Document and the Plan Trust Agreement did not exist prior to Plaintiff's husband's death. Plaintiff's conclusory statement, by itself, is not enough to support such a finding.  Defendant Henkel, on the other hand, indicates that the Policy had been issued to Henkel Corporation in September, 2002 by Defendant MetLife and its material terms (including the disputed active-at-work requirement) were posted on the Company's intranet that same month. (Defendant Henkel's Sur-Reply Br. at 1.)

[2] Plaintiff's Appendix Exhibit 1, another copy of the Highlights brochure, does not contain this page.  Similarly, the Administrative Record, which includes only the even pages of the Highlights booklet, is also missing this page.

unambiguous language in the plan itself." *Valeck v Watson Wyatt & Co.*, 266 F. Supp. 2d 610, 621 (E.D. Mich. 2003).

The Plan unequivocally states that employee must work on or after January 1, 2003, to be eligible for benefits. (*See* Admin. Record at 27-30.) MetLife's determination to follow the clear and unambiguous language of the Plan was reasonable, notwithstanding the booklet's omission of similar language. Under the arbitrary and capricious standard, the court must defer to the plan administrator's interpretation if it is rational in light of the plan's provisions. *Yeager*, 88 F.3d at 381. As such, even if the SPD's omission at issue did create ambiguity in Plaintiff's mind, MetLife reasonably determined that such ambiguity would be resolved by the unambiguous actively-at-work requirement contained in the Plan language, which, even if not sent to Cormier, was readily available on the company's intranet. Because the court finds a reasoned explanation for MetLife's final determination MetLife's decision was not arbitrary and capricious.

### D.  Plaintiff's Equitable Estoppel Claim Fails

Because the Plan is unambiguous, Plaintiff has failed to allege facts to create a viable equitable estoppel claim under ERISA. The Sixth Circuit has held that Plaintiffs may bring a federal equitable estoppel claim under ERISA, at least for welfare plans. *Sprague*, 133 F.3d 388 at 403 (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991)). In order to successfully state a claim for equitable estoppel under ERISA a plaintiff must show:

> (1) conduct or language amounting to a representation of material fact;
> (2) awareness of the true facts by the party to be estopped;
> (3) an intention on the part of the party to be estopped that the

11

representation be acted on, or conduct toward the party asserting
the estoppel such that the latter has a right to believe that the former's
conduct is so intended;

(4) unawareness of the true facts by the party asserting the estoppel; and

(5) detrimental and justifiable reliance by the party asserting estoppel on the
representation.

*Armistead,* 944 F.2d at 1298.  Defendant Henkl argues that Plaintiff did not plead an

equitable estoppel claim in her First Amended Complaint and is now precluded from

asserting such a claim.  (Def. Henkl's Resp. at 12.)  Conversely, Plaintiff asserts that

her Complaint alleges all of the necessary elements.

Assuming that Plaintiff has pleaded the necessary elements of an equitable

estoppel claim under ERISA, her claim still fails as a matter of law, because the Plan

terms are unambiguous.  In *Sprague*, the Sixth Circuit (sitting en banc) expressed that

"[p]rinciples of estoppel, however, cannot be applied to vary the terms of unambiguous

plan documents; estoppel can only be invoked in the context of ambiguous plan

provisions." *Sprague*, 133 F.3d at 403.  The court also held that "reliance can seldom, if

ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous

terms of plan documents available to or furnished to the party."  *Id.*

The Plan terms in the present case are unambiguous as to the "actively-at-work"

requirement.  In the relevant sections, the Plan states that the Personal Benefits

Eligibility Date is January 1, 2003.  (Admin. Record at 27.)  Later the Plan expressly

sets out the Actively at Work requirement, so that benefits become effective "on the first

day after you return to Active Work" if the employee is not actively at work on January 1,

2003.  (*Id.* at 30.)

12

In addition, Plaintiff's equitable estoppel claim fails because the Highlights brochure, which Plaintiff claims was the only document available to the Plaintiff or her decedent prior to his death, references the Plan documents.  The first page of the 2003 Benefit Highlights brochure, which Plaintiff has stated the decedent received, states "while every effort was made to ensure the accuracy of the information contained in this booklet, *should a discrepancy arise between the information herein and the legal Plan document, the legal Plan document shall govern at all times.*" (Def Henkl's Resp. Ex. 2) (emphasis added.)[3]  In addition, the Highlights booklet repeatedly directs employees how to receive additional information.  "Detailed information about your benefit plan options is included in your Benefit Manual that can be accessed through the intranet . . .  If you do not have access to a computer at work, please contact Benefits-On-Line at 1-800-343-6535."  (*Id.* at 20.)  Thus, Plaintiff and decedent had additional information available to them explaining where to seek more detailed information about their insurance benefits and eligibility requirements.  Because the terms in the booklet and the Plan do not directly contradict one another, the Plan documents govern, and Plaintiff's equitable estoppel claim fails as a matter of law.

**IV.  CONCLUSION**

IT IS ORDERED that Plaintiff's "Motion for Summary Judgment" [Dkt # 12] is DENIED and Defendant MetLife's "Motion to Affirm the Administrator's Decision" [Dkt # 18] and Defendant Henkel's and Henkel Corporation Voluntary Term Life Plan's "Motion for Summary Judgment" [Dkt # 20] are GRANTED.

---

[3] As was previously noted, Plaintiff omitted this page from the Benefits Highlights Booklet that she has attached as Exhibit 1 of Plaintiff's Appendix.

13

 S/Robert H. Cleland

ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 13, 2005


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, July 13, 2005, by electronic and/or ordinary mail.

 S/Lisa G. Teets

Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\Even Clerk's Orders\04-72287.Miehls.ERISA.Order.On.Motions.for.Judgment.wpd